UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                     )
                Plaintiff,           )
                                     )
        v.                           )           No. 4:15CR00163 RWS/NCC
                                     )
DAVID MICHAEL HAGLER,                )
                                     )
                Defendant.           )

## MEMORANDUM AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The above matter was referred to the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b).

Defendant David Michael Hagler filed a Motion To Suppress Evidence on May 12, 2015.

(Doc. #32) after an indictment was returned against him on April 8, 2015 (Doc. #15). The court

held a hearing on defendant's Motion on July 16, 2015. The government presented exhibits and

the testimony of Special Agent Ankur Patel, who is a federal law enforcement officer with the

Federal Bureau of Investigation with ten years of experience. The government's exhibits are

copies of the four search warrant packages concerning the investigation of defendant and the

criminal complaint[1] issued prior to defendant's indictment. At the conclusion of the hearing, the

---

[1] Defendant was charged by way of federal criminal complaint on March 24, 2015. A
superseding indictment was returned against defendant on June 17, 2015. (Doc. #42).
Defendant is now charged with five counts: making a false statement in connection with
acquisition of a firearm from a licensed dealer (two counts); possession of a machinegun;
possession of a firearm or ammunition by a person convicted of a misdemeanor of domestic
violence and possession of a firearm or ammunition by an unlawful user of marijuana.
Defendant was granted additional time to file any subsequent pretrial motions after the

undersigned ordered that post-hearing briefs be filed.  Defendant filed his post-hearing brief on July 24, 2015.  (Doc. #58).  The government filed a brief in response on July 29, 2015.  (Doc. #59).  The transcript of the evidentiary hearing was filed on August 14, 2015.  (Doc. #61).

Defendant moves the court to quash the search warrants issued on March 24, 2015, March 25, 2015 and April 3, 2015 in which items of evidence were seized.  In the alternative, defendant asks for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  In support of his Motion, defendant claims that the federal search and seizure warrants issued for his two residences, vehicle and smartphone lack probable cause.  He also argues that the federal search warrants contain material omissions and materially false and misleading statements.  Based on the evidence and testimony adduced, as well as a review of the transcript of the hearing in this matter; and having had an opportunity to evaluate the credibility of the witness and to observe his behavior, the undersigned makes the following finds of fact and conclusions of law.

## Findings of Fact

FBI Special Agent Ankur Patel initiated an investigation of defendant David Michael Hagler in mid-February 2015 after the FBI communicated with two confidential informants about defendant (hereafter CS#1 and CS#2).  As a result of the investigators' nearly month-long communication with these sources, and conducting records checks to confirm their information, investigators sought federal search and seizure warrants for defendant's residences.  The FBI, working with the Bureau of Alcohol, Tobacco and Firearms (AFT), suspected that defendant possessed drugs, illegal firearms and pipe bombs, or other dangerous instruments that could be used to harm others and the property surrounding his city residences.

superseding indictment was returned.  Defendant chose not to file any additional motions.  (Doc. #52).

On March 24, 2015, at approximately 9:43 a.m., Agent Patel applied for and obtained two federal search and seizure warrants (hereinafter, "Howell search warrants") in the Eastern District of Missouri to search defendant's residences located at 1139 Howell and 1143 Howell in the City of St. Louis. The houses are situated next to one another. In addition to the search and seizure warrants for defendant's vehicle and smartphone, the Howell search warrants, applications, returns and inventories of the returns are attached to the Government's Supplemental Attachments To Response To Defendant's Motion To Suppress Evidence. (See, Docs. #50 and #50-1 through #50-13, government's exhibits 1A through 4C). These exhibits were received into evidence. The parties did not offer as evidence the actual CS recordings made in this case. [2] The affidavits in support of the Howell search warrants are identical.

In addition, on March 25, 2015, at approximately 12:20 p.m., Deputy U.S. Marshal Matthew Liefer applied for a federal search and seizure warrant for defendant's Chevy Astro van as a result of defendant's arrest on March 25, 2015 and the searches of the Howell residences. Finally, on April 3, 2015, at approximately 10:00 a.m., Agent Patel applied for a federal search and seizure warrant for defendant's Kyocera-brand smartphone, which was seized from defendant at the time of his arrest. Thus, the four search and seizure warrants are incorporated by reference as if fully set out here. They are the best evidence of their contents. The summary below is merely for the trial court's convenience.

The Howell search warrant affidavits, along with the smartphone warrant's affidavit, described the qualifications of Agent Patel. The Howell search warrant affidavits described the residences with particularity and included a photograph of the Howell residences. The Kyocera-

---

[2] Defendant requested in his post-hearing Brief that the court listen to the CS recordings provided to defendant in discovery. The court has declined to do so for the reasons set forth in this Memorandum, and Report and Recommendation.

brand smartphone search warrant described the device with particularity as well.[3]  The Howell search warrants were served on March 26, 2015.

Each of the three sworn affidavits by Agent Patel described his knowledge and experience regarding counter-terrorism investigations and other criminal activity, including the illegal possession of firearms and failure to register such firearms.  Agent Patel's experience, and that of the other law enforcement personnel with whom he consulted, led him to conclude that individuals who illegally possess firearms do so in connection with a variety of criminal activity.

Likewise, the Chevy Astro van search and seizure warrant affidavit described Deputy U.S. Marshal Liefer's knowledge and experience regarding counter-terrorism investigations and related drug and firearms crimes.  Deputy U.S. Marshal Liefer's experience led him to conclude that individuals with the ability to modify firearms such that they are illegal to possess do frequently keep firearms, ammunition and related materials in their residences and vehicles.

Each of the four affidavits stated that two confidential sources, beginning in mid-February 2015, provided information to law enforcement regarding defendant's extreme views against law enforcement, the government and certain minority groups.  Agent Patel testified that the cooperating sources were concerned about defendant's state of mind.  CS#1 is described as someone who has been a decades-long friend of defendant's and who is familiar with both Howell residences, and defendant's mechanical abilities that support what is described as defendant's anarchist's lifestyle of living "off the grid."  Existing "off the grid" is a cultural reference that, in this case, refers to the fact that defendant has no utility service at his residences.

_____

[3] The court is aware that the exhibit copy of the smartphone search and seizure warrant return is blank and contains no signatures or dates.  However, Agent Patel testified that he made the return on this search warrant to U.S. Magistrate Judge David Noce.  Defendant is not challenging any issue regarding the search warrant return, so the court makes no findings or conclusions in this regard.

He collected water and he uses a wood burning stove and solar power for heat. CS#1 stated—
without providing a timeframe prior to January 2015—that he has observed metal sheeting
secured to the inside walls of defendant's primary residence at 1143 Howell; and that defendant
stated such measures were to protect him from a gunfight with police. Defendant discussed with
CS#1 the scenarios in which he would like to build a booby trap that would kill law enforcement
officers and literature about such subjects. CS#1 observed numerous firearms at 1143 Howell,
including rifles, shotguns, handguns and thousands of rounds of ammunition. CS#1 described
defendant as a routine abuser of marijuana, who had over recent months escalated his threats of
harm against defendant's ex-wife. CS#1 held the opinion that defendant was someone who
appeared to be highly agitated by the events of Ferguson, Missouri and who was upset that the
City of St. Louis might seize his properties for back taxes owed.

Agent Patel's investigation of defendant included confirmation by various record checks
that defendant's Howell residences had no utility service; he was facing an August 2015 property
seizure as a result of municipal foreclosure proceedings; and he had a federal tax lien against
him. In addition, Agent Patel found a 1991 St. Louis County Police Department report in which
defendant is alleged to have made statements to police similar to those made to CS#1 in early
2015 regarding his prior marijuana possession at that time.

CS#2 also told law enforcement about an escalation in defendant's extreme views against
the government, police and African Americans and Muslims. In February 2015, CS#2 observed
a ballistic vest, and numerous firearms on defendant's bed inside 1143 Howell, including a
weapon that CS#2 thought was illegal because it had a shortened barrel. CS#2 also observed that
defendant was moving a large safe into a box trailer parked in the co-joined yards of the Howell
residences. Defendant is alleged to have told CS#2 that the safe contained additional weapons

and ammunition.  CS#2 also saw two pipe bombs inside a bedroom of 1143 Howell three months prior to providing this information to law enforcement.  CS#2 described defendant as proficient with machinery, and a person who routinely altered serial numbers on firearms and modified weapons for added firepower in anticipation of an encounter with law enforcement at the Howell residences.

In addition, CS#2 made video and audio recordings of communications and contact with defendant at the direction of the FBI.  (CS#1 made no recordings of communications with defendant.)  During February 2015 and March 2015, defendant made potentially incriminating recorded (and unrecorded) statements to CS#1 and CS#2 about his alleged sale, possession, and modifications of firearms.  He is alleged to have made references to the events in Ferguson, Missouri.  Defendant is also alleged to have told CS#2 his desire to attack the police, defendant's ex-wife and others.  Lastly, CS#2 recorded conversations in which defendant is alleged to have discussed his possession and use of marijuana.  Agent Patel and the investigative team reviewed these recordings and memorialized the conversations that were not recorded.   Investigators also determined through the ATF that defendant did not have any history of firearms registrations with the national system that tracks such registrations.  CS#2 told investigators that defendant showed him or her a modified Glock handgun capable of firing multiple rounds within two weeks prior to presenting the affidavits to U.S. Magistrate Judges in this District on March 24, 2015, March 25, 2015 and April 3, 2015.

The Chevy Astro van search and seizure warrant affidavit closely tracks the affirmations made in Agent Patel's three search warrant affidavits.  The Chevy Astro van search warrant affidavit also included the affirmations, on information and belief, by Deputy U.S. Marshal Liefer, that the van was used by defendant to transport firearms and possible explosives based on

information from CS#2 to agents about locations other than the Howell residences where defendant was alleged to have detonated homemade bombs.

Each of the four affidavits stated that CS#1 is a reliable source that has provided information corroborated by independent research. CS#1 received no financial consideration for the cooperation and this person has a 1978 misdemeanor conviction for stealing under $50. CS#2 was deemed reliable and corroborated by independent research. CS#2 received no monetary compensation for cooperating and does have a prior misdemeanor conviction involving concealed carry certifications (date not included), and four pending felony charges for filing false state income taxes. The affidavits do not mention any other track record of information supplied by CS#1 and CS#2.

Agent Patel and U.S. Deputy Marshal Liefer also included defendant's criminal history in support of the four affidavits. Defendant has a 1995 misdemeanor conviction for Assault Third Degree With Injury, after he entered a guilty plea. The remainder of defendant's criminal history included arrests or informational reports—dating as far back as 1980, for alleged encounters with local officials and armed confrontations with others near his properties. Much of this history is decades old. The affiants believed that all this demonstrated defendant's affiliation with marijuana and weapons, and a tendency toward confrontation with government officials.

On March 25, 2015, defendant's smartphone was seized after his arrest on the federal criminal complaint. Thereafter, Agent Patel's affidavit for the Kyocera-brand smart phone tracked the statements made in the affidavits for the Howell residences, and it included additional information, including that on March 6, 2015, defendant displayed his smartphone to CS#2 to show internet searches to modify firearms. The March 6, 2015 encounter between defendant and CS#2 was recorded and its content was reviewed by investigators.

Based on the above information, U.S. Magistrate Judges Thomas C. Mummert and David D. Noce believed there was probable cause for a search of the Howell residences, the subject Chevy Astro van, and the Kyocera-brand smartphone. Investigators seized numerous items of evidence including firearms, ammunition and drug-related evidence from the Howell residences and another firearm from defendant's Chevy Astro van.

**Discussion**

Defendant sets out two grounds for suppression of the four search warrants in this case: (1) the affidavits contain false and misleading material and omits other critical material, and (2), therefore, they lack probable cause.

**A.      Motion for a <u>Franks</u> hearing**

Defendant claims that the affidavits are riddled with material misstatements and omissions because the confidential source information was flawed or false and the affiants misstated his words in the affidavits. In addition, defendant asks in his post-hearing Brief (Doc. #58), that the court independently review the recorded statements made between CS#2 and defendant because he argues that his actual statements were omitted by Agent Patel. Because the court finds below that defendant has not met his burden, and that the four challenged search warrants are valid based on the testimony and the exhibits submitted, defendant's request for further review of these recordings is denied. <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).

A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit that contained false statements, and that such statements were made knowingly and intentionally or with reckless disregard for the truth. <u>United States v. Box</u>, 193 F.3d 1032, 1034 (8th Cir. 1999). To prevail on a <u>Franks</u>-type challenge to the validity of a search warrant, a defendant bears the burden to establish by a preponderance of the evidence that

8

the affiant, either knowingly and intentionally or with reckless disregard for the truth, included a false statement within the warrant affidavit. Franks, supra, 438 U.S. at 155-56. Mere negligence or innocent mistake is insufficient to void a warrant. Id. at 171. The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, viewing all of the evidence, the affiant must have entertained serious doubts as to the accuracy of the information he reported. United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995). If the defendant makes such a showing, then the court must consider whether the information in the affidavit, absent the false material, is sufficient to establish probable cause.

In other words, a defendant's entitlement to a Franks hearing requires him to make a substantial preliminary showing that a material statement in a search-warrant affidavit, was made by the affiant with reckless disregard for whether the statement was true or was a deliberate falsehood. United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002); United States v. Anderson, 243 F.3d 478, 482 (8th Cir. 2001). During a Franks hearing, the court may consider facts outside the four corners of the search warrant affidavit in order to determine the affiant's state of mind. United States v. Finley, 612 F.3d 998, 1002-03 (8th Cir. 2010). Negligence and innocent mistake are insufficient to prove reckless disregard for the truth or intentional falsehood. Id.

In this case, regardless of whether defendant met his burden of the substantial showing required by Franks, he had the opportunity to challenge each of the search warrant affidavits at the pretrial hearing. Defendant cross examined Agent Patel and asked questions outside the four corners of the affidavits in an effort to show the affidavits were false.[4] United States v. Butler,

---

[4] The government did not call Deputy U.S. Marshal Liefer to testify at the evidentiary hearing held on July 16, 2015. Defendant affirmed at the hearing that he did not think it necessary for Deputy U.S. Marshal Liefer to testify.

594 F.3d 955, 961 (8th Cir. 2010)("The Government called and the Defense cross examined Officer Powell and another member of the task force and Defendant was given an opportunity to call witnesses at the hearing.").

As detailed below, defendant challenges the veracity of various statements made in support of the Howell residences' affidavits. The affidavits are each 20 pages in length inclusive of the attached list of items to be seized and a photograph of the individual residence. Although his claims of falsehoods and material omissions are wide-ranging and lengthy, the undersigned finds that his combined complaints do not satisfy the threshold requirements for a <u>Franks</u> hearing, and the affidavits establish sufficient probable cause. To the extent that the affidavits' discuss defendant's possible motives for his alleged conduct, those passages are background information about defendant and they are, therefore, peripheral to this court's ruling on defendant's pending Motion. Given the breadth of defendant's claims of falsehoods, omissions and misleading statements, the court will address these challenges as they appear chronologically in the affidavits.

Defendant claims <u>false</u> and <u>misleading</u> statements or reckless <u>omissions</u> are found in:

*Paragraph 7*

(1)     Defendant argues that the affidavits failed to include the entirety of defendant's statement to CS#2 regarding the payment of taxes on his properties. He suggests that it was a material omission that Agent Patel did not mention that defendant planned to pay taxes on one residence and not the other, which presumably influenced Judge Noce's view of defendant's alleged volatility. In the government's post-hearing Brief, counsel for the government countered that this piece of exculpatory information is inconsequential, especially in the context of the several inculpatory statements made by defendant to CS#2 about taxes.

As such, the affiants' decision to omit the statement of defendant's plan to pay his taxes was neither necessary to establish probable cause nor a reckless omission from the affidavits. See, e.g., United States v. Gonzalez, 781 F.3d 422, 431 (8th Cir. 2015)(denying defendant's claims that omissions from the search warrant affidavit were material where defendant failed to show that the omitted material was 'clearly critical' to the probable cause determination). Defendant's plan to pay his taxes was not clearly critical to the probable cause determination and this point should be denied. Id.

*Paragraph 8*

(2)     Defendant also argues that it is false that he "dug an underground tunnel, accessible through the basements of the residences, that allows him undetected passage between them"… and that he has steel plating against his walls to secure the residence in the event of a gunfight.  At the evidentiary hearing, Agent Patel explained that investigators did not find underground tunnels or metal plating at the Howell residences.  However, the fact that investigators did not find any such tunnel or plating at the time they served the warrants does not prove the claimed falsehood; given the totality of the circumstances, the items listed for seizure, and the other information in the affidavits that was corroborated by the two cooperating sources. United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013)(reasoning that two cooperating sources with consistent information provided to police corroborated one another).  The cooperating sources told investigators about the tunnels and plating.  Agent Patel also testified that the confidential source did not tell investigators that he or she saw the tunnels but, rather, that defendant said he built the tunnels.  Inasmuch as tunnels and steel plating were not the objects of the Howell search warrants, failing to find them does not equate to the affiants drafting a knowing and intentional falsehood into the affidavits or that they did draft the information with

reckless disregard for the truth under <u>Franks</u>.  Even so, there exists sufficient probable cause to search the Howell residences without these sentences.  Therefore, defendant cannot show that the challenged information set out in these paragraphs was necessary to a probable cause finding. <u>United States v. Gabrio</u>, 295 F.3d 880, 883 (8th Cir. 2002).  This point should be denied.

*Paragraph 9 and 21*

(3)  Defendant next argues that CS#1's claim that defendant is a habitual marijuana user is false; and the affidavits falsely represent a portion of the recorded conversation between him and CS#2 on March 6, 2015 about marijuana and defendant's alleged illegal modification of an AR-15 firearm.  On cross examination, Agent Patel explained that CS#1 told investigators about defendant's marijuana use in the past and the present, which was corroborated in part by the affidavits' reference to a 1991 police report involving defendant and allegations that he grew marijuana at home.  Moreover, CS#2 corroborated CS#1's claims about defendant's marijuana use.  Further, Agent Patel explained that investigators reviewed the March 6, 2015 recording made by CS#2 of defendant stating that he grew the best marijuana in North County in a hidden compartment in his basement.  Agent Patel further testified that he found a "grow room" with marijuana seeds and trace amounts of marijuana during the search of the Howell residences, but no active marijuana grow was evident.  In addition, Agent Patel testified that investigators were aware through the cooperating sources that defendant did not grow marijuana in the same manner as previously because his residences did not have electricity.  Therefore, Agent Patel's investigation supported the inclusion of this information in the affidavits and the reference to defendant's alleged marijuana use was not false or overstated.  The two cooperating sources provided timely information that was "based on [their] first-hand observations, not merely rumor or innuendo."  <u>United States v. Williams</u>, 10 F.3d 590, 593 (8th Cir. 1993).  Defendant's bare

denial of the corroborated allegations does not satisfy his burden by the preponderance of the evidence in the face of Agent Patel's extensive investigation detailed herein. Franks, supra. To the extent that defendant further argues that the affidavits misled the U.S. Magistrate Judges about defendant's current marijuana possession (as opposed to use in the past), this argument is without merit given the totality of the circumstances, and Agent Patel's testimony that defendant can be heard to mention both past and present marijuana growing in the March 6, 2015 CS#2 recording. The affidavits do not overstate that defendant is actively growing marijuana at the Howell residences. The confidential source information centered on defendant's alleged use of marijuana, and the affiants do cite to his drug and gun possession as a crime under investigation.[5]

Also, defendant claims in his post-hearing Brief (Doc. #58), that the affidavits are false because he did not tell CS#2 in the March 6, 2015 recording that he polished the nub of his AR-15 to make it shoot fully automatic. Instead, defendant counters that he told CS#2 that he polished the nub of his AR-15 to make it shoot more smoothly. In the government's view, the distinction may be significant inasmuch as it relates to evidence of the crimes charged, but it does not help defendant with respect to whether he has shown a basis for a Franks hearing on this point.

This is so because Agent Patel testified on cross examination that it was his recollection that defendant stated that he polished the nub of his AR-15 to make is fully automatic, which would transform the firearm into a machine gun. The government takes the position in its post-hearing Brief that CS#2's March 6, 2015 recording, which is transcribed in greater detail in the Brief, is consistent with Agent Patel's testimony. The recording is not before the court. However, Agent Patel's testimony is consistent with his explanation of the totality of the

---

[5] As noted above, defendant is charged with possession of firearms by an unlawful user of a controlled substance and this offense was listed in the affidavits.

investigation and the several steps he took to corroborate both confidential sources' information. Defendant's disagreement with Agent Patel's interpretation of the March 6, 2015 communication with CS#2 cannot be said to equal an intentional falsehood.  See, Finley, 612 F.3d 998 at 1002-03.  Moreover, according to the affiants in this case, the FBI's investigation of defendant was premised on defendant being prohibited from possessing *any* type of firearm for any purpose because of his misdemeanor conviction for alleged domestic violence and his alleged status as a drug user.  There is no evidence that Agent Patel and Deputy U.S. Marshal Liefer did knowingly and intentionally or with reckless disregard for the truth entertain "serious doubts as to the truth of [their] statements or had obvious reasons to doubt the accuracy of the information [they] reported."  United States v. McIntyre, 646 F.3d 1107, 1113-14 (8th Cir. 2011) (quotation omitted).  This point should be denied.

*Paragraphs 10, 15, 16 and 18*

(4)     Defendant claims the affidavits are false because investigators did not find booby traps, pipe bombs and bomb components at the Howell residences; and the sources were untruthful about his alleged desire to kill police officers and rob a bank.

As to allegations that the cooperating sources were being untruthful about defendant possessing explosives, these claims miss the mark given the totality of the circumstances surrounding Agent Patel's investigation, which included CS#2 providing the brand name of an explosive familiar to agents that defendant is alleged to have discussed.  In addition, CS#1 told investigators that he or she had seen a copy of the so-called "Anarchist's Cookbook" at 1143 Howell.  Although there is no timeframe included in the affidavit for this sighting, CS#1 said that the book was open to directions about a "foot tripped booby trap."  At the evidentiary hearing, Agent Patel testified that he interviewed both confidential sources and CS#2 said that he or she

last saw the alleged pipe bombs three months prior to meeting with law enforcement.  Given the totality of the investigation and that CS#2 told the affiants that defendant moved weapons and ammunition around his properties and yard in anticipation of the police conducting a search of his residences, defendant cannot show that Agent Patel did knowingly and intentionally or with reckless disregard for the truth include the allegations about booby traps.  There is no requirement that a search warrant is valid only if all the items sought are actually seized. Warden v. Hayden, 387 U. S. 294, 298-301 (1967).  Therefore, this point should be denied.

Defendant also argues that the affiants omitted material information that he said he was thinking out loud with no plans to actually set booby traps.  This point should be denied given the entire investigation described in the affidavits and Agent Patel's testimony that CS#1 and CS#2 had a long history with defendant; they had recent concerns about defendant's agitated state of mind; and they observed caches of guns and ammunition in February 2015, and CS#2 observed pipe bombs at the Howell residences three months prior to working with law enforcement, among other details.  See, e.g., Evans v. Chalmers, 703 F.3d 636, 651 (4th Cir. 2014)("Affiants are not required to include every piece of exculpatory information in affidavits").

With regard to the allegations that defendant professed a desire to kill or shoot at police officers, both CS#1 and CS#2 made similar statements to law enforcement about this topic, which are included in the affidavits.  Thus, the two sources further corroborated each other. Keys, 721 F.3d at 518.  Again, there is no evidence that these statements were included knowingly and intentionally to commit a falsehood on the court or with reckless disregard for the truth.  Therefore, this point should also be denied.

*Paragraphs 11 and 14*

(5)     Defendant claims that the affidavits make false claims that he possessed illegal firearms and ammunition in hidden locations at the Howell residences.  The affidavits attributed these statements to CS#1's longtime communications with defendant.  CS#1 is described as someone who has known defendant for 30 years.  In addition, the affidavits recount that CS#2 observed weapons and ammunitions on defendant's bed during the first week of February 2015. On cross examination, Agent Patel explained that he relied on the corroborating statements made by the two cooperating sources, along with recordings that were made between CS#2 and defendant about the type, locations and modifications of various firearms at the Howell residences.  Moreover, the affidavits include details regarding defendant's conviction on November 16, 1995 for misdemeanor Assault Third Degree with Injury in Circuit Court in St. Louis City.  The three Patel affidavits also included an "Attachment: List of Items to be Seized," that explain that defendant was under investigation for the federal crime, among others crimes, of being a person previously convicted of a misdemeanor crime of domestic violence in violation of Title 18, United States Code, Section 922(g)(9).  Gov't Exs. 1A through 3A and 4B.  Therefore, these statements are not false or misleading and defendant's argument has no merit.  <u>Franks</u>, <u>supra</u>.

*Paragraph 17*

(6)     Defendant argues that it was a material omission that Agent Patel failed to mention that the police report of the incident that led to defendant's conviction for Assault in the Third Degree With Injury stated that the incident was not a "domestic incident."  Thus, defendant claims that the affiant misled Judge Noce about defendant's ability to lawfully possess a firearm.  The 1995 police report is not before the court.  Nevertheless, the undersigned finds

that this omission was neither misleading nor critical to Judge Noce's finding of probable cause to search the Howell residences and Chevy Astro van because the police report itself would not determine whether the government can carry it's burden at trial to prove that defendant's 1995 conviction is a qualifying predicate under Title 18, United States Code, Section 922(g). <u>See</u>, <u>Gonzalez</u>, 781 F.3d 422 at 431. This point should be denied.

*Paragraph 21*

(7)     Defendant argues that the affidavits fail to include a complete recitation of his feelings about CS#1. According to the affidavits, in the course of the investigation, defendant told CS#2 that he was unhappy with CS#1 and said that he could "hurt CS#1 if he really wanted to." Defendant objects to the omission of his complete statement in which he said that he would never harm CS#1. The government counters in its post-hearing Brief that this omission was not material to Judge Noce's probable cause determination about defendant's alleged possession of firearms. The court agrees that neither the parsed communication, nor its complete version is clearly critical to the finding of probable cause, given the overall investigation recited by Agent Patel in the affidavits as they are discussed herein. <u>Gonzalez</u>, 781 F.3d 422 at 431. This point should be denied.

In addition, defendant claims that a passage within this paragraph about him driving to Illinois from Missouri with CS#2 and a gun in the vehicle omits material information critical to the probable cause determination. He claims that the objectionable passage described defendant's alleged disassembling of a firearm but it omits qualifying language to Judge Noce that defendant was attempting to "follow the applicable law within the two states." This argument has no merit, given the totality of the investigation and the allegations of the crimes being investigated. <u>Id.</u> As discussed above, the affidavits clearly establish that investigators

believed that defendant was prohibited from possessing any firearms under federal law regardless of attempts he might have made to comply with state laws. This point should be denied.

*Paragraphs 24 and 25*

(8)    Defendant next argues that the affidavits omit the complete communication with CS#2 about defendant's alleged experience with improvised explosive devices (IEDs). In his review of the recordings, defendant claims that he can be heard to tell CS#2 that his experience with IEDs occurred in childhood, and that he did not articulate any current involvement with explosives. The government's post-hearing Brief (Doc. #59), does not squarely address whether defendant disavowed any involvement with explosives at the time the recording was made.

Agent Patel did not concede in his testimony that any mistake was made in the affidavits. Further, Agent Patel testified that he arranged for CS#2 to make these recordings to further the investigation. The affidavits do include other references to defendant's alleged recent use of Tannerite explosive to create booby traps at his residences. Thus, any decision by the affiant to exclude this exculpatory statement as part of this extensive investigation does not meet the threshold showing that this was a <u>Franks</u> violation and this point should be denied. Given the totality of the investigation, even assuming that defendant's recitation of this recording by CS#2 is correct and the affiants' version was wrong, there is no evidence that the affiants had serious reason to doubt such information or that they recklessly disregarded the truth by including it.

Finally, defendant claims that the affidavits omitted that investigators had no information that defendant possessed a sawed off shotgun. This claim lacks merit. The affidavits could not include what was unknowable to Agent Patel and U.S. Deputy Marshal Liefer at that time. Agent Patel testified that one of the sources made a video recording of the inside of defendant's

safe during the investigation of what appeared to be a short barrel shotgun, and agents had no records of defendant's registration of a short barrel shotgun. The affidavits sufficiently established that defendant is prohibited from possessing *any* type of firearm regardless of the particular type of firearm. Defendant's argument should be denied.

To the extent that defendant further denies or discounts the characterizations and claims made about him by the two cooperating sources, this is not the standard for a <u>Franks</u> hearing. The courts are concerned with whether the affiants' conduct by using such material was intentionally false or made with reckless disregard for the truth. Agent Patel testified on direct and cross examination that he corroborated the CS information by reviewing the recordings made, cross referencing the information from the two cooperating sources, and checking records to verify the information contained in the affidavits.

The government does not concede any wrongdoing (intentional or otherwise) in these four affidavits and in light of the totality of the circumstances, and in consideration of the evidence adduced at the hearing, the court finds that defendant is not entitled to a further hearing. This is so because defendant's challenges to the affidavits do not sufficiently attack the core allegations that established the probable cause findings made below: that defendant was under investigation for possessing firearms, drugs and other prohibited devices.

**B.     Probable cause**

The Fourth Amendment requires that a search warrant be supported by probable cause. <u>United States v. Montes-Medina</u>, 570 F.3d 1052, 1059 (8th Cir. 2009). The United States Supreme Court has defined probable cause to search as "a fair probability that the contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). To be valid, search warrants must be based upon a finding by a neutral and detached

judicial officer that there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967). See also, Fed. R. Crim. P. 41. Stated another way:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,' "probable cause to issue the warrant has been established."

United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) (quoting United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006)).

The Supreme Court has determined what quantum of evidence is needed to meet this probable cause standard:

> In dealing with probable cause, … however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." See Illinois v. Gates, 462 U.S. at 232. Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id. Probable cause may be based on the totality of the circumstances present and, as a result, affidavits should not be read in a grudging, hyper-technical fashion. See United States v. Ventresca, 380 U.S. 102, 109 (1965). Probable cause may be established in a variety of ways, including reliance on hearsay statements from reliable persons; hearsay statements from confidential informants corroborated by independent investigation; or on the observations of trained law enforcement officers. See Gates, 462 U.S. at 245; Draper v. United

States, 358 U.S. 307, 313 (1959); and McDonald v. United States, 335 U.S. 451, 454 (1948). Information from a proven reliable informant is by itself sufficient to support a finding of probable cause to search. United States v. Wright, 145 F.3d 972, 974-75 (8th Cir. 1998). When a confidential informant is used in support of a search warrant, the issuing judge considers both the informant's reliability and knowledge base. United States v. Butler, 594 F.3d 955, 962 (8th Cir. 2010)(citations omitted). "Where a previously unknown informant provides information, the informant's lack of track record requires some independent verification to establish the reliability of the information." United States v. Taylor, 106 F.3d 801, 803 (8th Cir. 1997). While a variety of methods are commonly used to establish probable cause, the ones listed here are by no means all-inclusive. Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 233. Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant. United States v. Wallace, 550 F.3d 729, 732 (8th Cir. 2008). When confidential sources are involved, "[t]he totality of the circumstances analysis applicable to probable cause determinations, …, does not mandate" both source corroboration and a reliable track record at the same time. Butler, 594 F.3d at 962 (emphasis added). The Eighth Circuit has noted that two sources of information can be "mutually corroborative." See, Key, 721 F.3d 512 at 518. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference and the role of the reviewing court is "simply to ensure [the issuing judge] had a substantial basis" for the finding. Illinois v. Gates, 462 U.S. at 236.

Agent Patel did not merely accept and rely upon the information provided by the confidential informants. He took steps to and did corroborate the information by conducting

numerous record checks of defendant's police encounters, court actions against him, and reports made by other government officials about him over the years. "It is well established that even the corroboration of minor, innocent details can suffice to establish probable cause." <u>Keys</u>, 721 F.3d at 518 (quotations omitted). As important to the probable cause determination in this case, investigators took the steps to have one confidential source make recordings when present with defendant to confirm their allegations.

The recordings that were made were then reviewed by investigators to verify some of the allegations made by CS#1 and CS#2 about defendant's ongoing possession of firearms and drugs. In addition, investigators confirmed defendant's criminal history to establish that he was in fact an individual prohibited from possessing firearms, regardless of type. "Information from a confidential informant is reliable if the informant has a history of supplying reliable information or if the information provided by the informant is independently corroborated." <u>United States v. Neal</u>, 528 F.3d 1069, 1073 (8th Cir. 2008). <u>United States v. Brown</u>, 49 F.3d 1346, 1349 (8th Cir. 1995) ("An informant may establish the reliability of his information by establishing a track record of providing accurate information.") (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The investigators set out the basis for believing that the information was reliable in this way and it sufficed to meet the probable cause requirement.

Therefore, the search warrant affidavits provided a sufficient basis to conclude evidence of illegal possession of firearms and drugs would be found if defendant's residences, vehicle and smartphone were searched. Two informants with longstanding personal connections identified defendant by name and location as someone in possession of illegal drugs, firearms and explosives. Investigators verified some of this information with recordings obtained by the CS#2

and through researching records. The probable cause is supported by the clear allegations of defendant's alleged possession of prohibited firearms, explosive devices and drugs.

### C. Good Faith

The good faith exception established in United States v. Leon, 468 U.S. 897 (1984) is an additional basis for this court's conclusion that the evidence seized from defendant as a result of search warrants should not be suppressed. The undersigned finds that it was reasonable for investigators who executed the warrants to rely upon them in good faith. In Leon, the Supreme Court considered whether the exclusionary rule ought to be applied in the case where the lower courts concluded that the subject search warrant was not supported by probable cause in the underlying affidavit. First, the Court weighed the question of whether the issuing judge acted with detached and neutral scrutiny and decided if so, then the judge's probable cause ruling should be given deference. 468 U.S. at 913-14. In this case, defendant has not shown that the issuing judges have acted other than in a detached and neutral manner. It does not follow from the totality of the circumstances of this case that the two United States Magistrate Judges who issued the four search and seizure warrants acted other than having exercised "the detached scrutiny of a neutral magistrate." Id. at 913. There is no evidence before this court that indicates that the issuing judges acted as a "rubber stamp for the police." Id. at 914.

Next, the Supreme Court considered that deference to the issuing judge may diminish in light of the type of knowing or reckless falsity in the affidavit that was the subject of Franks. The undersigned has already concluded that the four affidavits in this case were not knowingly or recklessly false and any mistakes are an insufficient basis for the relief defendant seeks. United States v. Finley, 612 F.3d 998, 1002-03 (8th Cir. 2010).

Further, the Court considered that applying the exclusionary rule

is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests.

Leon, 468 U.S. at 917.

Finally, the Supreme Court considered whether the form of the issued warrant was technically sufficient. Id. at 921. In this case, the warrants are technically correct. Even if some details discussed above are technically incorrect, there is no evidence that such information was included to make the affidavits purposefully false, or that their inclusion was sufficiently reckless to be the functional equivalent of knowing falsity. Thus, the search warrants issued by the U.S. Magistrate Judges for defendant's Howell residences, the Chevy Astro van and the Kyocera-brand smartphone were reasonably relied upon by the investigators who executed them.

### D.    Staleness

According to defendant, even if the Howell search warrant affidavits had adequate probable cause, any information gleaned by the confidential informants that he was a so-called anarchist was stale by the time they were presented to Judge Noce.[6] The Eighth Circuit has said that "a search warrant must be executed 'promptly.'" United States v. Tenerelli, 614 F.3d 764, 770 (8th Cir. 2010)(citation omitted). Stale information in an affidavit could negate a finding of probable cause to support a search. "A delay in executing a search warrant may make probable cause fatally stale." United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992). However, "[t]he timeliness of the information supplied in an affidavit depends on the circumstances of the case, including the nature of the crime under investigation." United States v. Smith, 266 F.3d 902,

---

[6] Defendant raised the "staleness" argument for the first time in Defendant's Post Hearing Brief In Support Of Defendant's Motion To Suppress Evidence (Doc. #58). He raises it only as it pertains to him being called an anarchist in the Howell search warrants. Therefore, the court only addresses this argument as to the Howell search warrants.

904-05 (8th Cir. 2001) (citing United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993)).

"'[T]here is no bright-line test for determining when information is stale . . . and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.'" United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (quoting Koelling, 992 F.2d at 822). Moreover, "[i]n investigations of ongoing narcotic operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'" Smith, 266 F.3d at 905 (quoting United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998)) (noting three-month old information in affidavit was not stale). "[W]here continuing criminal activity is suspected, the passage of time is less significant." United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998). Similarly, confidential source information regarding the possession of illegal firearms "is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time." United States v. Neal, 528 F.3d 1069, 1074 (8th Cir. 2008).

In this case, defendant's argument for staleness is premised on the idea that the government erroneously marked him as an alleged criminal because the two unreliable confidential sources identified him as a so-called anarchist. However, the content of the affidavits make it clear that defendant's alleged ongoing possession of dangerous and voluminous weaponry, was the key to creating probable cause. Thus, the Howell search warrants did not grow stale by March 26, 2015 when they were served because the affidavits established that defendant faced criminal liability under Title 18, United States, Section 922. Thus, there was a reasonable probability that there were narcotics and firearms in defendant's residences when the Howell warrants were issued. Defendant's argument does not require a

different outcome.  In <u>United States v. Palega</u>, 556 F.3d 709 (8th Cir. 2009), for example, the Eighth Circuit rejected a search-warrant staleness argument in a drug-distribution case based on source information as old as two years and as fresh as five days.  <u>Id.</u> at 714-15.  Here, the delay in serving the search warrants did not ruin the probable cause.  The Howell search warrants were served well within the fourteen-day period required by Judge Noce.  The information in the Howell search warrants was timely under the circumstances of this case and this claim should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Hagler's Motion to Suppress Evidence (Doc. #32) be **denied**.

**IT IS FURTHER ORDERED** that this cause is set for trial before United States District Judge Rodney W. Sippel on **Monday, December 7, 2015, at 9:00 a.m.**

Further, as to the motion to suppress, the parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to timely file objections may result in the waiver of the right to appeal questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).


/s/ Noelle C. Collins
United States Magistrate Judge


Dated this 22nd day of September 2015.